**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| BRYANT DAWSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:12-cv-41 (WLS) |
| | : | |
| CAIRO IGA LLC, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## ORDER

Before the Court is Plaintiff Bryant Dawson's Motion for Default Judgment. (Doc. 6.) For the reasons that follow, Dawson's motion is **GRANTED**.

## PROCEDURAL POSTURE

This is a 42 U.S.C. § 1981 case against Cairo IGA, a grocer, for the alleged unlawful discrimination against Plaintiff Bryant Dawson ("Dawson") while he was employed with the defendant as manager of the meat department. On April 3, 2012, a deputy sheriff with the Grady County Sheriff's Office served a summons and the complaint to Wilbert Lee Williamson ("Williamson"), Cairo IGA's registered agent, through the grocer's manager, Terry Cone. (Doc. 4.) Cairo IGA failed to answer the complaint or otherwise defend this action. (*See* Docket.)

On October 15, 2012, Dawson moved for an entry of default. Following the Clerk of the Court's entry of default, Dawson moved for a default judgment. Dawson, through counsel, appeared December 17, 2012, on his Motion for Default Judgment. The opposing party failed to appear. The Court granted Dawson's motion and told counsel the Court would issue a written ruling on the motion. Plaintiff's counsel appeared May

1

6, 2013, for a bench trial. Plaintiff's counsel presented evidence on discrimination and resulting damages. The opposing party failed to appear.

## FACTUAL FINDINGS

The Court makes the following findings of fact from the well-pleaded allegations in Dawson's complaint, as well as the testimony and exhibits presented during the bench trial.[1] Dawson is a black male. He began working at Cairo IGA in Cairo, Georgia, on or around July 7, 2003, as a meat cutter. Around 2005, Cairo IGA's previous owner promoted Dawson to manager of the meat department.

About five years after Dawson began working at Cairo IGA, Lee Williamson, a white male, became the store owner. When Williamson took over Cairo IGA, he began to treat Dawson differently from the other managers, who were white. For example, before Williamson owned Cairo IGA, Dawson kept a key to the store's back door to unload deliveries. Williamson took Dawson's key and told him he would have to ask other employees to open the door for him. Williamson did not ask the white managers to return their keys. Similarly, on April 22, 2010, Dawson and his family went to a food show on behalf of Cairo IGA. Dawson was supposed to have a hotel room for the stay, and, before Williamson took over, always had one. When he arrived, Williamson discovered he did not have a room and that an assistant manager, who was white, did. Dawson called Williamson to ask about his room, and Williamson told him his family may have to sleep on the floor.

As business began to increase at the grocery store, Williamson approached Dawson and asked him to hire a part-time meat cutter. Dawson hired Troy Singletary, a

---

[1] By operation of a default, Cairo IGA admits Dawson's well-pleaded allegations of fact. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

white male, around October 2010.  At some point, Williamson was overheard asking Singletary, "Troy, how do you feel about running the meat department?" Troy replied, "Lee, what are you asking me?" "It's what I'm telling you," Williamson answered. "I'm making you the Meat Market Manager because since you've been here I've been thinking that it's not right having a black guy run my market." Singletary then said, "Shit, Lee, I'm surprised you let him run it this long." Williamson and Singletary then began laughing, and Williamson said, "Well, after today he won't be running it anymore." Ray Whitfield, a white customer, testified he overhead Williamson in a similar conversation in the Cairo IGA bathroom. Additionally, Whitfield noticed that Williamson often greeted white customers but not black ones.

Dawson heard about Singletary and Williamson's conversation but continued working as though he did not. A few days later, Williamson called Dawson and Singletary into his office and told them he was promoting Singletary to manager of the meat department and was demoting Dawson to meat cutter. Dawson asked why he was being demoted. Williamson said he felt Singletary could run the market better than he could and if he didn't like it, he could find something else to do. Williamson removed Dawson from salary and began paying him hourly. Dawson was humiliated.

Around October 15, 2010, Williamson fired Dawson, purportedly because of a lack of communication, though Dawson spoke with Williamson often. Dawson never received complaints about his performance. Other employees and customers regarded Dawson as a friendly, hardworking manager and meat cutter. Williamson demoted and fired Dawson because of his race. Witnesses testified that Cairo IGA no longer employs any black employees. Richard Bowers, a former Cairo IGA employee, testified he cannot recall Williamson ever hiring a black employee.

Dawson's termination affected him emotionally and financially. Dawson took a number of other jobs, none of which paid him as much as Cairo IGA. In November 2010, he began working at Piggly Wiggly, another grocer, in the meat department. He then went to Harvey's, a grocery store, because it offered him higher pay. With the drop in wages, the Dawson family began struggling to pay bills. The family was almost evicted from their home; Dawson lost much of his furniture. Chrishunda Dawson, his wife, had to drop out of college to work full time. To pay the electricity bill, Mrs. Dawson sold her car. Dawson became distraught over his inability to provide for his family. He had trouble sleeping. Mrs. Dawson, who described her husband as "a wreck," often found him pacing around the house at odd hours. He cried in bed at night and worried excessively about whether his wife would leave him.

## DISCUSSION

### I.   Standards

"The entry of a default judgment is appropriate '[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise.'" *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). Before obtaining a default judgment, the party seeking such a judgment must first seek an entry of default from the Clerk of the Court. Fed. R. Civ. P. 55(a). But the entry of a default does not entitle a plaintiff to a default judgment. *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[2] The defaulting party admits the movant's well-pleaded factual allegations. *Eagle Hosp.*

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citing *Nishimatsu*, 515 F.2d at 1206); *Buchanan*, 820 F.2d at 361. Those well-pleaded factual allegations must provide a sufficient basis for imposing liability on the defaulting party. *Tyco Fire & Security, LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In considering a default judgment, the Court must address (1) jurisdiction, (2) liability, and (3) damages. *Johnson v. Rammage*, No. 5:06-cv-057 (CAR), 2007 WL 2276847, at *1 (M.D. Ga. Aug. 7, 2007).

The Court finds Dawson is entitled to a default judgment. Cairo IGA has not filed an answer or otherwise defended this action. Dawson has complied with Federal Rule 55. He requested an entry of default from the Clerk of the Court, and then timely moved for an entry of default judgment. The Court has jurisdiction over Dawson's claims through federal question jurisdiction, 28 U.S.C. § 1331.

The Court turns now to Cairo IGA's liability on Dawson's cause of action.

## II.    Race discrimination under 42 U.S.C. § 1981.

Dawson brings a Section 1981 claim against Cairo IGA for disparate treatment and hostile work environment. Section 1981 affords "all persons" in the United States "the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. To establish a Section 1981 claim, Dawson must show he suffered an adverse employment action as a result of intentional discrimination. *See Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994). A plaintiff may establish intentional discrimination through direct evidence or, in the absence of direct evidence, through circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Patterson v. McLean Credit Union*, 491 U.S. 164,

186 (1989), *superseded by statute on other grounds as stated in Walker v. Mortham*, 158 F.3d 1177, 1191 n.30 (11th Cir. 1998).

Dawson's evidence and well-pleaded factual allegations establish a disparate treatment claim under Section 1981. Although Dawson also establishes a direct discrimination claim,[3] the Court analyzes his claim under the *McDonnell Douglas* framework. To establish a prima facie case of discrimination using circumstantial evidence, Dawson must show he (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside the protected class. *Hooper v. Total System Services, Inc.*, 799 F. Supp. 2d 1350, 1378 (M.D. Ga. 2011); *see Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1270 (11th Cir. 2004). Dawson met those elements by a preponderance of the evidence and the well-pleaded allegations. As a black male, he is a member of a protected class. Dawson was, by all accounts, qualified for his job and an exemplary manager and worker. A demotion and termination are both adverse employment actions.  Finally, Williamson replaced him with Troy Singletary, a white male. Cairo IGA, of course, has not offered a legitimate, nondiscriminatory reason for Dawson's demotion and termination.

Dawson also claims he suffered from a hostile work environment. The Court finds Dawson has failed to establish a hostile work environment claim. To establish a hostile work environment, Dawson had to show he (1) belongs to a protected class, (2) was subjected to unwelcome harassment, (3) the harassment was based on his race, and (4) the harassment was sufficiently severe or pervasive to alter the terms or conditions of

---

[3] According to Dawson's well-pleaded factual allegations, Williamson told Singletary he wanted to promote him, and demote Dawson, because of Dawson's race, just a few days before Dawson suffered an adverse employment action.

employment. *King v. Volunteers of America, North Alabama, Inc.*, 502 F. App'x 823, 829 (11th Cir. 2012) (citation omitted). Although there is little doubt Dawson suffered from racial discrimination, he has not identified any comments, ridicule, or insults sufficient to find that the harassment was severe or pervasive enough to alter the conditions of his employment and create an abusive working environment.

The Court finds Cairo IGA liable under Section 1981. Dawson's Motion for Default Judgment on this claim is **GRANTED**.

### III.   <u>Damages</u>

Having found Cairo IGA liable for racial discrimination, the Court turns now to the question of damages. Dawson requests approximately $28,750 in back pay, five years of front pay, $300,000 for emotional pain and suffering, and $300,000 in punitive damages. The Court agrees Dawson is entitled to these damage types, though in different amounts.

Dawson is entitled to back pay from the date of his demotion. "Back pay is designed to 'place the injured party in the position he or she would have been in absent the discriminatory actions." *Joseph v. Publix Super Markets, Inc.*, 151 F. App'x 760, 770 (11th Cir. 2005) (quoting *EEOC v. Smith Pontiac GMC, Inc.*, 896 F.2d 524, 529 (11th Cir. 1990)). Because Dawson lost wages as a result of his demotion and termination, the Court finds back pay is necessary to return him to the financial position he would be but for the unlawful discrimination. Dawson's testimony and evidence—tax returns and pay checks—show he is entitled to $32,254.18 in back pay.[4]

---

[4] The Court reaches this figure based on the following information. On his 2009 federal tax return, Dawson reported $33,900 income for 2009. His income dropped to $30,131 in 2010, when he received the demotion and termination. In 2011, his income plunged to $20,742 and then increased to $22,400 in 2012. According to his Harvey's pay stubs, Dawson receives, on average, $2,020.47 per month. Using

But an award of back pay alone is insufficient to remedy the ongoing effects of the discrimination. Dawson lost the return on his seniority at Cairo IGA, meaning he will, for the foreseeable future, get paid less than he did in 2009. Further, Dawson cannot be reinstated to his previous position because it is now held by another employee and Williamson is antagonistic to his interests. Where, like here, an employee cannot be reinstated to his previous position, a district court may award front pay to remedy the discrimination. *See E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 619 (11th Cir. 2000); *Kennedy v. Ala. State Bd. of Educ.*, 78 F. Supp. 2d 1246, 1249 (M.D. Ala. 2000). The Court agrees with Dawson that five years' front pay is warranted. Dawson has made, on average, $2,020.47 monthly at Harvey's, so he is projected to earn about $24,245.64 this year. Once again, using $33,900 as his salary before the discrimination, the Court finds Cairo IGA is liable to Dawson for $48,271.80 for five years' front pay ($9,654.36 yearly), beginning from the entry of this Order.

Dawson is also entitled to damages for humiliation and emotional distress. "The injury in civil rights cases may be intangible . . . . It need not be financial or physical but may include damages for humiliation and emotional distress." *Stallworth v. Shuler*, 777 F.2d 1431, 1435 (11th Cir. 1985) (citing *Carey v. Piphus*, 435 U.S. 247, 263–64 & n.20 (1978)); *see also Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir. 1999). Dawson and his wife testified the discrimination and loss of employment humiliated him, caused marital problems, and wounded his sense of self-worth. Additionally, Dawson was frequently restless, lost sleep, and often broke down and cried with his wife. The Court found Dawson and his wife credible and the emotional toll they

---

$33,900 as his base pay before the discrimination, Dawson lost $3,769 in 2010, $13,158 in 2011, $11,500 in 2012, and approximately $4,827.18 from January 2013 to date—a total of $32,254.18.

experienced to be real and substantial. The Court awards Dawson $25,000 to compensate Dawson for these injuries.

Finally, punitive damages are available against an employer under Section 1981 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Ferrill*, 168 F.3d at 476 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "Malice or reckless indifference is established by a showing that the employer discriminated in the face of the knowledge that its actions would violate federal law." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1280 (11th Cir. 2002). The Eleventh Circuit has held that a punitive damages award may be supported by evidence of "(1) a pattern of discrimination, (2) spite or malevolence, or (3) a blatant disregard for civil obligations." *Dudley v. Wal-Mart Stores, Inc.*, 166 F.3d 1317, 1322–23 (11th Cir. 1999) (citation omitted).

The evidence in this case supports an award of punitive damages. Williamson, the source of racial animus, owns Cairo IGA. *See Dudley*, 166 F.3d at 1323 (noting that punitive damages are justified only when the discriminating person was "high up the corporate hierarchy" or that "higher management" approved his behavior). Soon after he took over the business, Williamson set in motion a series of humiliating, insulting events that affected Dawson, but not his white colleagues. Dawson no longer had keys to access the back door for deliveries. With Williamson in charge, Dawson had to ask another employee, inevitably a white one, to let him open the back door. Williamson at one point told Dawson his family would have to sleep on a floor during a work trip. Further, Williamson's decision to demote and terminate Dawson occurred during a bathroom conversation that ended in laughter. Williamson, by his own words, did not

want a black person managing his meat department. His conduct was particularly reprehensible in that it was intentional, reflected what amounts to an unwritten policy, targeted a financially vulnerable individual, and evinced a complete disregard to a longtime employee's well-being. These facts not only establish a pattern of discrimination but also malevolence toward Dawson because of his race. The Court awards Dawson $50,000 in punitive damages.

## CONCLUSION

For those reasons, Dawson's motion (Doc. 6) is **GRANTED**.[5] **IT IS HEREBY ORDERED AND ADJUDGED** that judgment be entered in favor of Plaintiff Bryant Dawson and against Defendant Cairo IGA, in the following principal amounts:

- $32,254.18 in back pay;

- $48,271.80 for five years' front pay;

- $25,000 in compensatory damages; and

- $50,000 in punitive damages.

Post-judgment interest shall accrue at a rate consistent with 28 U.S.C. § 1961(a), from the date of judgment. Within **twenty-one (21) days** from the entry of this Order, counsel for Dawson may submit any motion for attorney fees. The Court will also entertain, within **twenty-one (21) days** from the entry of this Order, a motion to amend judgment to include prejudgment interest on Dawson's back pay award. Such a request, if any, shall include a proposed calculation of prejudgment interest. *See*

---

[5] The Court notes that Dawson requested injunctive relief in his complaint, but he did not pursue this request in any briefing, hearing, or proposed pretrial order. Additionally, because Dawson requested, and the Court granted damages for his continuing harm, the Court finds that a legal remedy is adequate to remedy the discrimination.

*generally Johnson v. TMI Mgmt. Sys., Inc.*, No. 11-0221-WS-M, 2012 WL 3257809, at

\*2 (S.D. Ala. Aug. 7, 2012) (discussing calculation of prejudgment interest).

     **SO ORDERED**, this  19th  day of July 2013.

                /s/ W. Louis Sands
                **THE HONORABLE W. LOUIS SANDS,**
                **UNITED STATES DISTRICT COURT**